MAVIS E. BURTRUM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Burtrum v. Commissioner
Docket No. 25093-90
United States Tax Court
T.C. Memo 1992-389; 1992 Tax Ct. Memo LEXIS 411; 64 T.C.M. (CCH) 95; July 13, 1992, Filed *411 Decision will be entered under Rule 155. For Petitioner: George M. Malis and John P. Herrinton. For Respondent: James F. Mauro and Mark I. Siegel. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6654
1980
$   877
$ 219
$  56
1981
3,915
979
300
1982
3,450
863
336
1983
3,964
991
243
1984
3,823
956
240
1985
3,482
871
200
1986
3,314
829
161
1987
1,934
484
- After concessions, the issues for decision are: 1. Whether payments received by petitioner from her former spouse are alimony under section 71. We hold that they are. 2. Whether petitioner is liable for additions to tax for failure to make estimated tax payments under section 6654(a) and failure to file under section 6651(a)(1) for each of the years at issue. We hold that she is. References to Mr. Burtrum are to Clyde Burtrum, petitioner's former husband. Section references are to the Internal Revenue Code in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure. *412 FINDINGS OF FACT 1. Petitioner
Petitioner lived in Flint, Michigan, when the petition in this case was filed. Petitioner and Mr. Burtrum were married from September 8, 1938 to July 15, 1980. During their marriage, they owned a business called "Furs by Clyde Burtrum, Inc." (Furs by Clyde Burtrum). Petitioner worked in Furs by Clyde Burtrum, on and off, from when it was started in 1957. 2. Petitioner's Divorce from Clyde Burtrum
a. The Burtrums' Divorce Counsel
In 1978, Mr. Burtrum filed for divorce from petitioner. Petitioner was represented by three attorneys during the pendency of the divorce, including Charles Cole, Michael Pelavin, and a third attorney. Petitioner dismissed Mr. Pelavin and the third attorney. Thereafter, Mr. Cole represented her until the completion of the divorce proceedings. Petitioner believed that Mr. Cole was not prepared for her divorce trial, and she sued him for malpractice after the divorce. Mr. Burtrum was represented by attorney Charles White during the divorce proceedings. b. Appraisals of "Furs by Clyde Burtrum" Furs by Clyde Burtrum was one of the Burtrums' most valuable assets. Petitioner and Mr. Burtrum each *413 had the business appraised for purposes of the divorce proceedings. The accounting firm of Dubrinski, Einstandig, Heilbrunn & Beckwith appraised the business for petitioner. On July 9, 1979, they appraised it at $ 562,690. Mr. Burtrum had appraisals of Furs by Clyde Burtrum done by Nick Luea and by a Mr. Rosenberg. [1] Mr. Luea valued the business at $ 165,000 and Mr. Rosenberg valued it at $ 195,000. c. Settlement Offers
In a letter dated April 7, 1980 (April 7 Settlement Offer), Mr. Burtrum's attorney proposed a settlement to petitioner's attorney, Charles Cole. The letter stated: "I hereby offer the following property settlement in connection with the above-captioned matter * * *." (Emphasis supplied.) The letter proposed that the marital assets, except for the business, be split equally between petitioner and Mr. Burtrum, based on values Mr. White assigned to them. The letter proposed, additionally, that the business be valued at $ 180,000, *414 and that this amount be split according to how the Burtrums held its shares, i.e., 55 percent to Mr. Burtrum and 45 percent to petitioner. The letter proposed that "Mrs. Burtrum's portion of the settlement be paid to her as follows:" Residence
$ 50,000
Furniture
7,500
Automobile (sold by Mavis)
1,000
Stocks
900
Savings account (Mavis' name)
10,000
Checking account (Mavis' name)
3,000
Life insurance on Mavis' life
3,100
Furs
6,000
Jewelry
2,000
Automobile (convertible)
3,500
Cash
10,000
Balance ($ 134,450)
$ 12,225.00 per year
x 11 years
[2] 134,450
$ 231,450
It proposed that Mr. Burtrum pay petitioner $ 134,450 (the balance of petitioner's share of the marital assets after certain assets had been distributed to the parties), over an 11-year period. The letter did not designate any of the amounts as alimony. Petitioner rejected this offer. On July 15, 1980, after approximately *415 3 days of trial, Mr. Cole approached petitioner with a verbal settlement offer from Mr. Burtrum. The offer provided that petitioner would be paid $ 191,000 over 11 years. Petitioner accepted this offer. d. Judgment of Divorce
The court issued a judgment of divorce on July 15, 1980, based on the verbal settlement. The judgment includes a section headed "PROPERTY SETTLEMENT". This section divides certain marital property between petitioner and Mr. Burtrum, including: personal property, the marital residence and furnishings, other real property, an automobile, insurance policies, bank accounts, stocks, a bond, money for attorneys' fees, and corporate shares of Furs by Clyde Burtrum. The property described in the divorce judgment is almost identical to that described in the April 7 Settlement Offer. The differences are as follows: i. The judgment of divorce includes "all those items of personal property, clothing and effects now in [Mrs. Burtrum's] possession"; ii. The judgment does not include $ 1,000, which is labeled as "Automobile (sold by Mavis)" in the April 7 Settlement Offer; iii. The judgment does not include a "balance" of $ 134,450, to be paid over 11 *416 years; and iv. The judgment includes, under the heading "ALIMONY", a provision requiring Mr. Burtrum to pay petitioner $ 191,000 over 11 years as follows: The sum of One Thousand Six Hundred Sixty Six and sixty-seven ($ 1,666.67) Dollars per month in advance of each month for a period of six years from the date of this Judgment of Divorce, and; thereafter the sum of One Thousand One Hundred Eighty Three and thirty-three ($ 1,183.33) Dollars per month in advance of each month for an additional period of five years and the requirement to pay any periodic alimony shall thereafter terminate. [Emphasis supplied.] The judgment requires the payment to continue "regardless of the death of * * * CLYDE BURTRUM or the death or remarriage of * * * Mavis Burtrum". It also says that the payment is "not subject to amendment by way of extension, enlargement, diminishment or termination for any reason whatsoever." The judgment also includes the following provision which insures the payments: to insure continuation of payment of the alimony provisions provided for herein in the event of the death of * * * CLYDE BURTRUM, he is ordered to convey sufficient unencumbered life insurance *417 upon his life which shall be placed in irrevocable insurance trust to be immediately established to provide for continuation of said payments in the event of his death * * * During the July 15, 1980, divorce proceedings, after petitioner accepted the settlement offer and immediately before the judge granted the divorce, Mr. White and Mr. Cole described for the Court the agreement the parties had reached. In explaining which property the parties agreed should be granted to petitioner, Mr. White stated the following: She shall receive the sum of one hundred and twenty thousand dollars in alimony payable at the rate of twenty thousand dollars per year on a monthly basis for a period of six years and shall thereafter receive the sum of seventy one thousand dollars payable at the rate of fourteen thousand two hundred dollars per year on a monthly basis for the next five years as alimony. [Emphasis supplied.] Petitioner was later called to the stand where Mr. Cole, her attorney, elicited the following testimony from her: Q And you've heard the proposal and property settlement that we've put on the record today, and you understand that the alimony that you are receiving, *418 you have to pay taxes on that? A Yes, I do. Q And if the court grants a divorce in this matter, are you satisfied with the terms and conditions that we've put on the record and would you like the court to incorporate that into a judgment of divorce?
A Yes, I would. Mr. Burtrum paid petitioner the full amount required under the judgment of divorce. 3. The Burtrums' Tax Returns
For each of the years at issue, Mr. Burtrum claimed an alimony deduction for the payments he made to petitioner under the alimony provision of the judgment of divorce. Respondent issued a notice of deficiency to him for 1985, 1986, and 1987, denying his deductions. Mr. Burtrum is proceeding against the United States in a refund action in Federal District Court. Petitioner did not file individual income tax returns for 1980 through 1987. OPINION 1. Were Payments From Clyde Burtrum to Petitioner Alimony?
The first issue for decision is whether payments to petitioner are alimony. Section 71(a)(1) [3] provides that the wife must include in her gross income periodic payments received in discharge of a legal obligation which, because of the marital or family relationship, is imposed on *419 or incurred by the other spouse under a divorce decree. Section 71(a) applies only to payments which are in the nature of support rather than a property settlement. , affg. ; . In deciding the character of an award in a divorce or separation decree, great weight is given to the language and structure of the decree. , affg. . The decision whether payments are in the nature of support or a property settlement, however, is not controlled by the labels assigned to the payments by the Court *420 in the divorce decree or by the parties in their agreement, but, instead, depends on all of the facts and circumstances. ; ; , affd. ; , affd. without published opinion . Petitioner and Mr. Burtrum testified that, during the divorce proceedings, they each wanted an equal division of their marital assets. Petitioner testified that she communicated this plan or goal to her attorneys. However, based on further negotiations it was agreed that a part of the payments were to be alimony, and the divorce judgment so states. Petitioner testified at the divorce proceedings that she understood she would have to pay taxes on the alimony she received. Petitioner contends that she was under duress when she said these things because she was being pressured to do so by Mr. Cole. She explained: "I felt that I might do worse if I didn't [agree *421 to have the money taxed as alimony]. I was under terrific pressure from Mr. Cole." We are not convinced that petitioner was under duress when she accepted the settlement offer. We believe that her testimony at the divorce proceedings is a clear indication that she agreed that the payments were to be alimony. Petitioner argues that her attorney was unprepared for trial and that the Court should look beyond the face of the record and analyze the substance of the transaction. . The April 7 Settlement Offer proposed that Mr. Burtrum pay petitioner $ 134,450 over an 11-year period. The divorce judgment increased that amount to $ 191,000, over the same timespan. Petitioner testified that there was "evidently" a change in the offer from property settlement to alimony, and we believe that she understood that it was to be alimony. Courts have considered many different factors in deciding whether payments are alimony or a property settlement, such as whether: (a) The parties intended the payments to be a division of their assets, (b) the payee surrendered valuable property rights, (c) the payments are fixed in amount *422 and not subject to contingencies, (d) the payments are secured, (e) the needs of the recipient are considered in setting the amount of the payments, (f) there is a separate provision for support elsewhere in the agreements, (g) the payments plus other property equals one-half of the marital assets, (h) the payments are related to the obligor's income, (i) the payments will continue regardless of the payee's death or remarriage, and (j) how the State Court characterized the payments. ; , affg. ; . We have no trouble ascertaining the clear meaning of the divorce judgment, or the intent of the Burtrums at the time of their divorce. As part of negotiations, they agreed that certain payments to petitioner would be alimony. Petitioner was aware of this, and she knew that these alimony payments would be taxable to her. As indicated, great weight is given to the language and structure of the decree. *423 That language is clear in this case. The parties to this case agree that the value of Furs by Clyde Burtrum was never determined in the divorce proceedings. Thus, the settlement was not so much a 50-50 split of marital assets as it was a negotiated settlement on mutually acceptable terms. Those terms included payment of $ 191,000 over 11 years designated as alimony. The divorce judgment includes listed property totaling $ 96,000, and $ 191,000 for alimony paid over 11 years. Other than this provision for alimony, there is no other provision for her support in the divorce judgment. Section 71(c)(2), which applies to divorce instruments executed before 1985, designates certain payments which are made over a period greater than 10 years as periodic and, thus, taxable to recipient: (2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS. -- If, by the terms of the decree * * *, the principal sum * * * is to be paid or may be paid over a period ending more than 10 years from the date of such decree * * *, then * * * the installment payments shall be treated as periodic payments * * *, but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal *424 sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received. Sec. 71(c)(2); ; . Petitioner received the principal sum of $ 191,000 in monthly payments over an 11-year period, pursuant to the Burtrums' divorce decree. Such payments are "periodic" and, thus, taxable to petitioner as alimony up to 10 percent of the principal sum ($ 191,000) in a given taxable year. Sec. 71(c)(2); ; We recognize that alimony was not discussed at earlier settlement discussions and that certain of the factors used by courts to decide whether a payment is alimony favor petitioner. However, upon consideration of the clear language in the divorce judgment, the intent of the Burtrums when the judgment was entered, the factors listed above, and section 71(c)(2), we conclude *425 that the $ 191,000 payments were alimony under section 71 and taxable to petitioner to the extent of 10 percent of the principal amount ($ 191,000) for each of the years in issue. See 2. Failure to Make Estimated Tax Payments
The next issue is whether petitioner is liable for the addition to tax for failure to make estimated tax payments under section 6654(a) for each of the years at issue. The addition to tax for failure to pay estimated tax under section 6654 applies unless the taxpayer is eligible for one of the specified exceptions in section 6654(e), none of which apply here. ; . Petitioner argues that to subject her to the addition to tax for failure to make estimated tax payments would be against equity and good conscience pursuant to section 6654(e)(3)(A). Section 6654(e)(3)(A) provides that no section 6654(a) addition shall be imposed if the Secretary determines "by reason of casualty, disaster, or other unusual circumstances the imposition of such addition to tax *426 would be against equity and good conscience." Sec. 6654(e)(3)(A). We conclude that this exception does not apply here. Accordingly, petitioner is liable for the addition to tax under section 6654(a) for each of the years at issue. 3. Failure to File
The final issue for decision is whether petitioner is liable for the addition to tax for failure to file under section 6651(a)(1) for each of the years at issue. If a taxpayer fails to file a timely income tax return, an addition to tax of 5-percent per month of the amount of tax required to be shown on the return shall be imposed, unless the taxpayer is able to show that such failure was due to reasonable cause and not willful neglect. Sec. 6651(a)(1). The burden of proof is on petitioner to show that the failure is due to reasonable cause and not willful neglect. ; . To prove "reasonable cause", a taxpayer must show that he or she exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. ; *427 sec. 301.6651-1(c)(1), Proced. & Admin. Regs. To disprove "willful neglect," a taxpayer must prove that the late filing did not result from a "conscious, intentional failure or reckless indifference." . In general, a taxpayer may establish reasonable cause for failing to file a timely return by proving that he or she reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return and later found that such advice was erroneous or mistaken. See ; . Petitioner argues that she should not be subject to the addition to tax for failure to file because she believed the various provisions of the judgment made the payments look like a property settlement, not alimony. However, she testified at the divorce proceedings that she understood that she would have to pay taxes on the alimony she received. Petitioner has not convinced us that her failure to file was due to reasonable cause and not willful neglect. Accordingly, we find that she is liable for *428 the addition to tax for failure to file under section 6651(a)(1) for each of the years at issue. Accordingly, Decision will be entered under Rule 155. Footnotes
1. The record does not include Mr. Rosenberg's first name.↩
2. We note that $ 12,225 x 11 = $ 134,475, not $ 134,450, as stated in the letter; the discrepancy may be due to rounding.↩
3. The Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 795, extensively changed the alimony rules effective for divorce decrees executed after December 31, 1984. We note that this case involves section 71(a)(1) prior to its revision.↩